# EXHIBIT OO

# Draycott Amended EEOC Charge, HOU00146304-146311

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA<br>☒ EEOC | 460-2009-04182<br>**FIRST AMENDED CHARGE** |

TEXAS WORKFORCE COMMISSION, CIVIL RIGHTS DIVISION and EEOC
*State or local Agency, if any*

S.S. No.

NAME (Indicate Mr., Ms., Mrs.): Mrs. Jane Draycott
HOME TELEPHONE (Include Area Code): 832-934-2115

STREET ADDRESS: 24225 Decker Prairie Rosehill Rd.
CITY, STATE AND ZIP CODE: Magnolia, Texas 77355
DATE OF BIRTH: March 16, 1969

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

NAME: City of Houston, Texas / Houston Fire Department
NUMBER OF EMPLOYEES, MEMBERS: over 4,000
TELEPHONE (Include Area Code): 713/ 837-0311

STREET ADDRESS: 901 Bagby
CITY, STATE AND ZIP CODE: Houston, TX 77002
COUNTY: Harris

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)):
☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ AGE
☒ RETALIATION  ☐ NATIONAL ORIGIN  ☐ DISABILITY  ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK: 2000    July 7, 2009
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. In 2000, while I was working at Houston Fire Station 46, I was subjected to sexual harassment and unwanted touching by a firefighter who was filling in for another firefighter that was on vacation. He grabbed me from behind and rubbed up against me, lifted the covers while he was in his bed and asked me to sleep with him, climbed into my bed while I was in it, and made numerous comments directed toward me that were inappropriate, offensive and/or of a sexual nature. I told him to stop, that his advances were not welcomed, and tried to avoid him as much as possible. These events were frequently witnessed by other firefighters on my shift. I did not file a formal complaint about him at that time because he was only on my shift temporarily and, more importantly, I did not want to be labeled as a trouble maker by my supervisor and other firefighters.

GIGI F. COX
Notary Public, State of Texas
My Commission Expires
November 16, 2009

(continued on next page)

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedure.

NOTARY - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT
*Jane Draycott*

I declare under penalty of perjury that the foregoing is true and correct.

*Jane Draycott*
Date 5 AUG 09    Charging Party (Signature)

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)
5th day of August 2009

EEOC FORM 5 (Test 10/94)

EEOC Charge No. 460-2009-04182
Charging Party: Jane Draycott
Respondent: City of Houston, Texas /
Houston Fire Department

II. Shortly after these events, I found out that this firefighter might be scheduled to work relief on my shift and I went to the Junior Captain and confidentially told him about the events and requested that this firefighter not be scheduled for my shift. Unfortunately, my complaint was not allowed to remain confidential because an explanation was demanded by the District Chief for why the Junior Captain would not allow the firefighter who sexually harassed me to work relief on my shift. I was required to make a formal complaint about this firefighter and it was quickly known in my station that I had filed a complaint against a fellow firefighter. As a result of the disclosure, I was isolated and treated differently by my co-workers. No action was taken against the firefighter that had harassed me.

III. I also worked at Houston Fire Stations 75 and 74 and it was known throughout those stations before I arrived that I had filed a complaint against a fellow firefighter for sexual harassment and was considered a problem co-worker. The isolation continued and I routinely spent my shift away from the other firefighters. I was made to feel uncomfortable and continued to experience incidents of inappropriate comments and conduct, including sexual and other inappropriate language.

IV. In 2007, I attended the Air Rescue Firefighting ("ARFF") certification program at Texas A&M which would allow me to work at a fire station at the airports. My teenage daughter had recently been killed in an automobile accident and I needed to transfer to a station that did not respond to automobile accidents. HFD had previously paid for firefighters to attend this program, however HFD was not accepting applications for the program in 2007. I requested that I be reimbursed for the cost of attending the certification program but that request was denied. After I completed the program, I was transferred to Station 92 at Intercontinental Airport. Immediately upon my arrival at Station 92, I was shunned by my co-workers and they knew before my arrival that I had filed a complaint against a fellow firefighter. I was subjected to a hostile work environment while at Station 92 and in one incident, the pictures of my children were removed from my locker, torn up, and placed in the trash. I filed a complaint in 2007 with the City's Office of Inspector General for harassment and hostile work environment but no action was taken to address the problem or to protect me from continued harassment.

EEOC Charge No. 460-2009-04182
Charging Party: Jane Draycott
Respondent: City of Houston, Texas /
Houston Fire Department

V. I was on light duty and maternity leave from late 2007 to April 2008. I returned to work on April 14, 2008. At that time I had been away from my regular firefighter duties for 5 months and about 3 weeks. When I returned to work, I was informed by my captain that because I had been off work for six months, I was required to go through interim testing and be tested on all apparatus and take a written test. When I notified him that I was not away for six months but about a week less than six months, he merely replied that anyone who worked at the airport fire stations and was out six months or longer had to do the testing before they could return to work. I was also informed that the written test would consist of 100 questions and to pass I would have to get at least 90%. I was also informed that if I failed the test twice, I would not be allowed to work at the airport. This was the first and only time this specific test was given to any Houston firefighter. This written test is not listed as a requirement for returning to work and there were no study manuals or test aids available. I later found out that the test I took was written by a Captain that was enrolled in the ARFF certification program that was being conducted at the Houston Firefighter Academy and was not certified at the time he created the test.

VI. Shortly after I completed and passed all the tests, two male firefighters (Engineer and Captain) returned to work after absences from the job of one year and two years. Neither individual was required to take the written test, nor were they retested on any apparatus. When the HFD graduates from the ARFF program were assigned to airport fire stations, they were informed they would be given a written 100 question test that they had to pass with at least a 90% score. That test was significantly different than the test I was given and that test had study guides. In addition, some male firefighters were allowed to take the test in 4 sections so they could study for only one section at a time, take that test and then begin studying for the next section. I was required to take the entire test at one time and was not offered the option of taking the test one section at a time.

VII. In 2008, my personnel file came up missing. Despite efforts to locate my personnel file at Station 92, Station 54, and at the main office, it has never been located. A firefighter's personnel file contains copies of all the training and certifications obtained by the firefighter. It also contains any complaints made by the firefighter to the captain. Some of the documents contained in the personnel file were only located in the personnel file and cannot be duplicated or replaced if the personnel file is lost.

EEOC Charge No. 460-2009-04182
Charging Party: Jane Draycott
Respondent: City of Houston, Texas /
              Houston Fire Department

VIII.    I completed all requirements and became eligible to work overtime beginning in late 2008. The policy of the department is to rotate the overtime among eligible firefighters at that station starting with the individual at the top of the list. I was denied the opportunity to work overtime and I was not contacted about overtime when my name was at the top of the list. Instead, the records were falsified to state I was "unavailable" even though no one attempted to contact me. Male firefighters were regularly called to work overtime. On one instance, I learned of an overtime opportunity the morning I was to get off duty. I immediately informed the captain that I was at the top of the list and I wanted to work overtime. I made several attempts that morning to restate my intention to work the overtime and attempted to confirm that the captain had relayed that information to the senior captain on the other shift. I was informed that a male firefighter would be working the overtime instead of me. This male firefighter was lower on the overtime list than me. My notification that I would work the overtime was ignored even though I was eligible to work the overtime, I was at the top of list to work overtime, and I had given all appropriate notification that I intended to work the overtime. Instead, after my notification, male firefighters were contacted about working the overtime until one was found to work the overtime instead of me. When I complained about the improper assignment of overtime, the captain making the assignment informed me that he "would take the hit" however, no reprimand or other action was ever taken against this captain for this policy violation.

IX.    I transferred to Station 54, working the A shift, in late 2008. Station 54 has a separate woman's sleeping area, unlike most older fire stations. Firefighters are responsible for cleaning the dorm and bathrooms. In late 2008, I was the only female firefighter assigned to Station 54. Occasionally, female firefighters were assigned to work at Station 54 as relief or temporary assignments. The stated policy at Station 54 was that male firefighters were not allowed in the female dorm or bathroom. However, beginning in late 2008, I regularly found in the female dorm cups containing tobacco spit, spilled drinks, dirty dishes, and used q-tips. I also would find nail clippings on my bed and floor and that the contents in my locker had been removed or damaged. In the female bathroom, I would regularly find the toilet seat up, and urine on the outside of the toilet and floor. Before they removed the carpet from the female bathroom, I would find wet spots in the corner that appeared to be urine. Finally, when I arrived for my shift, I would sometimes find yellow areas in the sink in the female bathroom which I believe were urine. In addition, at the beginning of my shift, I would frequently find that my mattress had been removed and replaced by an older worn mattress, even after I wrote on the mattress that it belonged in the female dorm. After several months of finding and moving my mattress back to the female dorm, and complaining to my captain about the conduct, I gave up and continue to sleep on the old worn mattress.

EEOC Charge No. 460-2009-04182
Charging Party: Jane Draycott
Respondent: City of Houston, Texas /
Houston Fire Department

X. I made frequent verbal complaints to the captains about the conditions in the female dorm and bathroom and the ongoing sexual harassment and hostile work environment. The only action taken was to restate to the firefighters that the female dorm and bathroom were off limits to the male firefighters.

XI. In approximately January or February 2009, a firecracker exploded when I opened the door to a stall in the female bathroom. Firecrackers were rigged to explode when either stall door in the female bathroom was opened. I immediately reported the incident to the captain on duty who told me he knew who was responsible but he refused to tell me who it was or take any action against the person responsible.

XII. In early 2009, I requested that locks be installed on the lockers in the female dorm. The only response I received was that it was being worked on. I made the request several more times during 2009 after my locker continued to be disturbed and my items damaged. One time when the worker came out to install locks on the lockers in the female dorm room, he was misdirected to the bathroom, which already had locks, even though it was clearly communicated to the captain of that shift that the locks were to be installed in the in the lockers in the female dorm.

XIII. Beginning in April 2009, the captain started writing my complaints about the conditions of the female dorm and bathroom, and the ongoing harassment and hostile work environment in the station's log. The log contains a summary of events at the station and is available for any firefighter to review and read. After my complaints were included in the log, the frequency and severity of the harassment and hostile work environment increased.

XIV. The only time, before July 2009, that an investigator came out to Station 54 to investigate complaints about the condition of the female bathroom was when the wife of male firefighter was visiting the station, saw the conditions in the female bathroom, and made a complaint. No action was taken to determine who was responsible for the conditions in the female bathroom, nor to try to prevent the continued incidents.

EEOC Charge No. 460-2009-04182
Charging Party: Jane Draycott
Respondent: City of Houston, Texas /
Houston Fire Department

XV. A second female firefighter was assigned to my shift and began working at Station 54 in April 2009. We were the only two female firefighters assigned to work at Station 54 on any of the four shifts. On June 27, 2009, I was the only female firefighter at the station because the other female firefighter was on vacation. I was in the female dorm when I found out that I had missed a telephone call. When I checked the speaker I discovered that the speakers for the female dorm and bathroom had been turned off. That same day, when I went to take a shower, I was scalded by hot water. The plumber who came out to check the water found that the cold water to the shower had been turned off. In order to do this, someone had to reach the cut off switch which was suspended about three feet above the ceiling tiles in the roof of the female bathroom and would have to use the eight foot A-frame ladder.

XVI. On June 29, 2009, I went to the HFD downtown office to file a formal complaint of harassment and discrimination with the other female firefighter. We were given approval by our captain to go downtown to get supplies and he knew I intended to also go to Staff Services and file a complaint. I filed a complaint for the incidents of June 27th as well as the ongoing incidents concerning the female bathroom. My shift ended the morning of June 30th and I was off work until the morning of July 7, 2009.

XVII. I arrived at Station 54 at about 5:40 a.m. on July 7, 2009. I spent the first few minutes checking in, moving vehicles, going to my gear locker and putting on my makeup. I was walking with the previous shift's captain down the hall when I tried to enter the female dorm. The door on that side was locked and the captain confirmed that no female firefighter had worked the previous shift. I then went around to the other door and entered the female dorm from the door facing my desk area. I immediately noticed that someone had written on the wall above my desk which had a picture of two of my children. On that wall to the left of the picture was written "niggar lover" (sic) and on the wall to the right of the picture was "die bitch." The phrases were written in black marker. I immediately went to get the captain to show him the vandalism. When I came back I looked at the area when the other female fire fighter had her desk and bed. I noticed that something was also written above her desk area and on her fold down bed. On the wall above her desk was "die niggar" (sic). There was also something written on her pull down bed, but I am not sure if it was the same phrase. Two of her pictures were removed and were on the floor near her locker. With the captain watching, I used a cloth to open my locker door which was cracked open. I always securely close the door to my locker when I leave at the end of each shift. Inside my locker, someone had taken a black marker to the pictures taped on the locker door. Written on the picture of my deceased daughter was "dead" and the work "die" was written over my picture.

EEOC Charge No. 460-2009-04182
Charging Party: Jane Draycott
Respondent: City of Houston, Texas /
Houston Fire Department

XVIII. I left the room to see if the captain of my shift had arrived and brought him back to the female dorm to show him the vandalism. I took some pictures with my cell phone then went out the bay to wait for the arrival of the other female firefighter. I went downtown later that day to make a statement about the incident.

XIX. After the incidents of July 7, 2009, I was placed on leave. The reason I was told I was being placed on leave was to allow an investigation to take place and appropriate actions to be instituted before I returned to work.

XX. The City of Houston, Texas / Houston Fire Department has engaged in a pattern and practice of targeting female firefighters and subjecting these firefighters to harassment, a hostile work environment, including sexual and other offensive language, and discrimination.

XXI. The actions directed towards me and other female firefighters were demeaning, humiliating, hostile, aggressive, unprofessional and constituted sexual harassment that was severe, egregious, pervasive and altered the terms and conditions of my employment. These events occurred continuously from 2000 until I was placed on leave on July 7, 2009.

XXII. I was targeted for harassment, a hostile work environment, and discrimination because of my gender (female). I was also subjected to retaliation for engaging in a protected activity, filing a complaint of gender discrimination.

XXIII. I have not attempted to list every act or detail in this charge.

XXIV. I expressly state that I want this charge filed with both the EEOC and the State or Local Agency.

XXV. I have been discriminated against, subjected to different terms and conditions of employment, and to harassment and retaliation because of my gender (female) in violation of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e, *et seq.*, and the Texas Commission on Human Rights Act, as codified in the Texas Labor Code § 21.001, *et. seq.*

EEOC Charge No. 460-2009-04182
Charging Party: Jane Draycott
Respondent: City of Houston, Texas /
Houston Fire Department

**AMENDED August 5, 2009**

XXVI. During the month since the incident occurred, I have been subjected to additional retaliation by HFD and the City of Houston. For the last month, there have been numerous attempts to discredit me personally through official and unofficial means. Immediately following the incident, HFD issued a false statement that they had sent a psychologist to meet with me. At the same time, the following false rumors have been leaked to the media by "anonymous" sources within the city: (1) that I was having an affair; (2) that I suffer from various purported medical conditions; and (3) that I wrote the racist and sexist graffiti myself (including the ones defacing the photographs of my deceased daughter). The tone of the investigation by the Office of Inspector General ("OIG") has taken the same tone regarding the incident, and I have been treated as an accused rather than as a victim. At OIG's request, I voluntarily submitted to a polygraph examination based on the representation of OIG that it was necessary for me to be polygraphed before anyone else from the station (or any suspect) could be given a polygraph exam. During the examination at the Houston Police Department ("HPD"), however, the polygraph examiner said and did several things that made me uncomfortable, including but not limited to (1) giving me a *Miranda* warning, (2) placing a heater next to me during the exam, (3) instructing me to nod my head and not give verbal answers, and (4) accusing me of trying to use "countermeasures" at the conclusion of the test. I have taken two other polygraph examinations in the past month, both of which found that there was "no deception" in the exam. I have had two experts review the polygraph conducted by HPD and both found no evidence of countermeasures. On July 28, HPD obtained an ex parte court order from a criminal court for me to appear in less than 20 hours to give a handwriting sample, even though OIG inspectors knew I had retained counsel and OIG had previously working with them in the investigation. They sent a constable to my house to serve me with the order, but I was not home. My lawyers arranged for me to come in voluntarily to give the handwriting sample. After this arrangement was made, OIG again obtained a second ex parte order for me to give a handwriting sample. I have been told that this order is tantamount to an arrest warrant. It appears that OIG has not requested that other firefighters give handwriting samples or take polygraph exams (with the exception of Paula Keyes, the other victim in the incident) and has not even interviewed all of the fire firefighters at Station 54. I believe these actions have been taken in retaliation for my coming forward with my complaint of sex discrimination and harassment.

*Jane Draycott*
5 AUG 2009

Page 8 of 8