# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF HOUSTON,<br><br>Defendant. | Civil Action No. 4:18-cv-00644 |
| JANE DRAYCOTT AND PAULA KEYES,<br><br>Plaintiffs-Intervenors,<br><br>v.<br><br>CITY OF HOUSTON,<br><br>Defendant. | |

## PLAINTIFF UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff, United States of America, submits its Reply in Support of its Motion for Summary Judgment as to Defendant City of Houston's affirmative defense of failure to mitigate.

Respectfully submitted,

RYAN K. PATRICK
United States Attorney
Southern District of Texas

KEITH EDWARD WYATT
Assistant United States Attorney
Texas Bar No. 22092900
Federal Bar No. 3480
ELIZABETH F. KARPATI
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9713
(713) 718-3303 (fax)

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

DELORA L. KENNEBREW
GA Bar No. 414320
Chief
Employment Litigation Section
Civil Rights Division

KAREN D. WOODARD  (MD Bar)
Principal Deputy Chief
Employment Litigation Section

i

Keith.Wyatt@usdoj.gov
Elizabeth.Karpati@usdoj.gov

Civil Rights Division

*/s/ Hillary K. Valderrama*
JEREMY P. MONTEIRO (DC Bar No. 977628)
HECTOR F. RUIZ, JR. (TX Bar No. 24029814)
HILLARY K. VALDERRAMA (TX Bar No. 24075201)
Trial Attorneys
United States Department of Justice
Employment Litigation Section
Civil Rights Division
4 Constitution Square
150 M Street, NE, Room 9.930
Washington, DC  20530
(202) 307-6230
(202) 514-1005 (fax)
jeremy.monteiro@usdoj.gov
hector.ruiz@usdoj.gov
hillary.valderrama@usdoj.gov

*Counsel for Plaintiff United States*

## TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS…………………………………………………………….………...iii

TABLE OF AUTHORITIES………………………………………………...……………...iv-vi

I.      NATURE AND STAGE OF PROCEEDINGS……………………….…….................1

III.    STATEMENT OF ISSUES………………………………………………………………..1

IV.    SUMMARY OF THE ARGUMENTS…………………………………………………1

VI.    ARGUMENT……………………………………………………………......………....1-15

    A. THE CITY CANNOT PROVE ITS FAILURE TO MITIGATE AFFIRMATIVE
    DEFENSE. ………………………………………………..…………………....2-11

        1.  AS THIS COURT HAS HELD, *SPARKS* HAS NOT BEEN OVERRULED AND
        CONTROLS THE MITIGATION ANALYSIS HERE. ……………………....2-6

        2.  BORISKIE'S TESTIMONY CANNOT SALVAGE THE CITY'S MITIGATION
        DEFENSE. ……………………………………………..……………....6-10

        3.  EXPERT EVIDENCE IS NOT NECESSARY TO PROVE A FAILURE TO
        MITIGATE DEFENSE, BUT THE EXPERT EVIDENCE THE CITY HAS
        OFFERED HERE IS INSUFFICIENT TO MEET ITS BURDEN TO
        DEMONSTRATE THE AVAILABILITY OF SUBSTANTIALLY SIMILAR
        JOBS UNDER *SPARKS*. …………………………………….…………....10-11

    B. TITLE VII CLAIMANTS HAVE NO DUTY TO MITIGATE THEIR EMOTIONAL
    DAMAGES, AND IMPORTING SUCH A DUTY WOULD CONTRAVENE
    CLEAR CONGRESSIONAL INTENT. …....……….…………….…………..11-15

VII.   CONCLUSION…………………………………………..……………….…………..15

ATTACHMENT…………………………………………………………..Appendix of Exhibits

ATTACHMENT…………………………………………………………....Plaintiff's Exhibits 1-4

ATTACHMENT……………………………………………….……Appendix of Plaintiff's Authorities

Personal identifiable information has been redacted from the exhibits.

**Table of Authorities**

**Cases**                                                                           **Page(s)**

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
    501 U.S. 104, 111 S. Ct. 2166 (1991) ...................................................................13
*Bates v. United States*,
    522 U.S. 23, 118 S. Ct. 285 (1997) .............................................................. 12-13
*Bertrand v. City of Lake Charles*,
    No. 2:10-CV-867, 2012 WL 1596706 (W.D. La. May 3, 2012) ............................4
*Breazell v. Permian Trucking & Hot Shot, LLC*,
    No. 7-15-CV-199-XR, 2017 WL 3037432 (W.D. Tex. July 18, 2017) ..................3
*Buckingham v. Booz Allen Hamilton, Inc.*,
    64 F. Supp. 3d 981 (S.D. Tex. 2014) ...................................................................4
*Caplan v. Fluor Enters., Inc.*,
    No. H-17-2083, 2019 WL 1512395 (S.D. Tex. April 8, 2019) .............................4
*Castagna v. Luceno*,
    558 F. App'x 19 (2d Cir. 2014) .........................................................................14
*E.E.O.C. v. Fair Oaks Dairy Farms, LLC*,
    No. 2:11-CV 265, 2012 WL 5332039 (N.D. Ind. Oct. 29, 2012) .......................14
*E.E.O.C. v. Fred Meyer Stores, Inc.*,
    954 F. Supp. 2d 1104 (D. Or. 2013) ..................................................................13
*E.E.O.C. v. Global Horizons, Inc.*,
    No. 11-00257, 2014 WL 819129 (D. Haw. Feb. 28, 2014) ................................14
*E.E.O.C. v. IESI Louisiana Corp.*,
    720 F. Supp. 2d 750 (W.D. La. 2010)...................................................................5
*Floca v. Homcare Health Servs., Inc.*,
    845 F.2d 108 (5th Cir. 1988) ................................................................................6
*Ford Motor Co. v. E.E.O.C.*,
    458 U.S. 219, 102 S. Ct. 3057 (1982)................................................... 5-6, 9, 13
*Gamboa v. Henderson*,
    240 F.3d 1074 (5th Cir. 2000) .............................................................................3
*Garcia v. Harris County*,
    No. H-16-2134, 2019 WL 132382 (S.D. Tex. Jan. 8, 2019) ...............................4
*Huffman v. City of Conroe*,
    No. H-07-1964, 2009 WL 361413 (S.D. Tex. Feb. 11, 2009)..............................4
*Johnson v. Chapel Hill Indep. Sch. Dist.*,
    853 F.2d 375 (5th Cir. 1988) ...............................................................................5
*Kennedy v. Magnolia Marine Transport Company*,
    189 F. Supp. 3d 610 (E.D. La. 2016) ............................................................ 14-15
*Little v. Tech. Specialty Prods. LLC*,
    No. 4:11-CV-717, 2014 WL 1116895 (E.D. Tex. March 18, 2018) .....................4
*Lowrey v. Tex. A&M Univ. Sys.*,
    117 F.3d 242 (5th Cir. 1997) ...............................................................................3
*Miles-Hickman v. David Powers Homes, Inc.*,
    613 F. Supp. 2d 872 (S.D. Tex. 2009) .................................................................4
*Miniex v. Houston Housing Auth.*,
    400 F. Supp. 3d 620 (S.D. Tex. Sept. 5, 2019) ................................................4-5

*Newcomb v. Corinth Sch. Dist.*,
   No. 1:12-CV-00204, 2015 WL 1505839 (N.D. Miss. Mar. 31, 2015) ....................................4

*Palasota v. Haggar Clothing Co.*,
   499 F.3d 474 (5th Cir. 2007) .........................................................................................10

*Paulissen v. MEI Techs., Inc.*,
   942 F. Supp. 2d 658 (S.D. Tex. 2013) .............................................................................4

*Rasimas v. Michigan Dep't of Mental Health*,
   714 F.2d 614 (6th Cir. 1983) .........................................................................................3

*Rogan v. Lewis*,
   975 F. Supp. 956 (S.D. Tex. 1997) ...............................................................................15

*Rybar v. Corp. Mgmt., Inc.*,
   No. 1:14-CV-242-KS-MTP, 2015 WL 12912342 (S.D. Miss. July 16, 2015) .........................5

*Schaeffer v. Warren County*,
   No. 3:14-CV-945-DPJ-FKB, 2017 WL 5709640 (S.D. Miss. Nov. 27, 2017) .......................4

*Sebelius v. Cloer*,
   569 U.S. 369, 133 S. Ct. 1886 (2013) ......................................................................12-13

*Sellers v. Delgado Comm. Coll.*,
   839 F.2d 1132 (5th Cir. 1988) .......................................................................................3

*Sellers v. Delgado Coll.*,
   902 F.2d 1189 (5th Cir. 1990) ....................................................................................2-3

*Sparks v. Griffin*,
   460 F.2d 433 (5th Cir. 1972) ....................................................................... 1, 2, 3-5, 6, 10

*Starr v. Oceaneering Int'l, Inc.*,
   No. 4:09-CV-0204, 2010 WL 644445 (S.D. Tex. Feb. 18, 2010) ........................................4

*Storr v. Alcorn State Univ.*,
   No. 3:15-CV-618-DPJ-FKB, 2017 WL 3471191 (S.D. Miss. Aug. 11, 2017) .......................4

*Tex. Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338, 133 S. Ct. 2517 (2013) ...........................................................................12

*United States v. Dial*,
   542 F.3d 1059 (5th Cir. 2008) .......................................................................................3

*United States v. Regents of New Mexico State Univ.*,
   No. 16-CV-911-JAP-LF, 2018 WL 4760664 (D. N.M. Oct. 1, 2018) ...........................13-14

*Vaughan v. Atkinson*,
   369 U.S. 527, 82 S. Ct. 997 (1962) ..............................................................................14

*West v. Nabors Drilling USA, Inc.*,
   330 F.3d 379 (5th Cir. 2003) ......................................................................................3, 5

## Statutes

42 U.S.C. § 1981a ...........................................................................................................12
42 U.S.C. § 2000e-5 ..................................................................................................5, 11-12

## Legislative History

Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (1991) ...........................................12
Equal Employment Opportunity Act of 1972, Pub. L. 92-261, 86 Stat. 103 (1972) ...................12

**Rules**

Advisory Committee Note to Fed. R. Civ. P. 26(e) (1970 Amendment) ........................................8

Fed. R. Civ. P. 37 ..................................................................................................................................8

Fed. R. Civ. P. 33 ..................................................................................................................................8

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.      Nature and Stage of Proceeding

On November 18, 2019, the United States filed for partial summary judgment on the

City's affirmative defense that Draycott "wholly failed to take reasonable steps to mitigate [her]

damages as required by law." *See* D.E. 59, p. 5-6 (quoting D.E. 9, p.10).  The City filed its

response in opposition to this motion on December 20, 2019.  D.E. 95.

### III.     Statement of Issues

1.  Can an employer bear its burden to prove its affirmative defense of failure to mitigate
    without showing that substantially similar employment for which the plaintiff was
    qualified was available?

2.  Does Title VII impose a duty upon employees to mitigate compensatory damages
    (like emotional distress), despite the statutory language's exclusive focus on the
    mitigation of allowable back pay?

### IV.     Summary of the Arguments

1.  Absent proof that substantially similar employment for which the plaintiff qualified
    was available, an employer cannot meet its burden to prove that the plaintiff has
    failed to mitigate her damages.

2.  Title VII does not impose a duty to mitigate emotional distress damages on claimants.

### VI.     Argument

Nothing in the City's response suggests that it can carry its burden to prove a failure to

mitigate.[1]  Because *Sparks* is good law in the Fifth Circuit, the City must prove that substantially

similar positions were available for Draycott, and it cannot bear its burden to do so on this

record.  Moreover, Title VII's text and history demonstrate that victims of discrimination have

---

[1] As the City seems to recognize in its response, the United States did not seek partial summary judgment as to the
City's affirmative defense to vicarious liability under *Faragher/Ellerth*.  *See* D.E. 95, pp. 4-5.  Consequently, while
the United States believes that the City's recitation of the evidence on this point is at best incomplete, it is not
addressed in this brief.  *See generally* D.E. 105, 105-1, 105-2.

no duty to mitigate as to compensatory damages (*i.e.*, emotional distress damages).  As such, the United States is entitled to summary judgment on this defense.

   A.  __The City Cannot Prove its Failure to Mitigate Affirmative Defense__.

   The City has not disputed a single fact presented in support of the United States' Motion for Summary Judgment and nothing in the City's response changes the fundamental fact that the City cannot bear its burden to show that substantially similar positions were available for Draycott.  The City cannot escape the fact that *Sparks* remains controlling law in this Circuit and requires it to demonstrate the availability of substantially similar positions to prove its mitigation defense.  At most, the limited evidence in the City's response (including the proffer of Chief Boriskie's testimony to support its position) suggests there may have been other positions which the City has failed to identify with adequate specificity available with the City.  But this evidence falls far short of proof that these nebulous positions were substantially similar to Draycott's job as a firefighter and that Draycott could have performed those jobs.  Finally, the United States does not suggest that employers must produce expert testimony to prove a failure to mitigate defense, merely that the City has developed insufficient evidence here (through an expert or otherwise) to do so. Thus, the United States is entitled to summary judgment on the City's failure to mitigate defense.

   1.  __As This Court Has Held, *Sparks* Has Not Been Overruled and Controls the Mitigation Analysis Here.__

   To prevail on its failure to mitigate defense, controlling Fifth Circuit precedent requires the City to prove that substantially similar positions were available and that Draycott failed to exercise diligence in seeking alternate employment.[2]  The City protests that the Fifth Circuit has

---

[2] In arguing that the City's mitigation defense fails due to lack of proof regarding the availability of substantially similar positions, the United States does not concede any lack of diligence on Draycott's part.  Even *Sellers* conceded that "[t]he reasonableness of a Title VII claimant's diligence 'should be evaluated in light of the individual

allowed employers to prove only a lack of diligence in several recent cases.  But despite this conflict, as many district courts have noted, none of these decisions have overruled the Fifth Circuit's earlier precedent requiring employers to prove both prongs of the affirmative defense.

In *Sparks v. Griffin*, the Fifth Circuit held that employers must prove both that Title VII claimants failed to exercise diligence in seeking alternate employment and that substantially similar positions were available in order to establish a failure to mitigate defense.  460 F.2d 433, 443 (5th Cir. 1972).  The Fifth Circuit has also held that "one panel…cannot overrule the decision of another panel; such panel decisions may be overruled only by a subsequent decision of the Supreme Court or by the Fifth Circuit sitting *en banc*."  *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (citations omitted); *see also United States v. Dial*, 542 F.3d 1059, 1060 & n.2 (5th Cir. 2008) (declining to apply more recent conflicting precedent "[d]espite whatever persuasiveness" the opinions had because the earlier case had not been overruled by an *en banc* decision).  *Sparks* significantly predated the panel decisions the City relies upon for the proposition that employers need not prove the availability of substantially similar positions if they can prove that the claimant did not seek alternate employment.  *See Sellers v. Delgado Comm. Coll.*, 839 F.2d 1132, 1139 (5th Cir. 1988); *Sellers,* 902 F.2d at 1193; *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003).  None of these opinions were *en banc* decisions, and as such they cannot overrule *Sparks*.  Consequently, *Sparks* remains controlling

---

characteristics of the claimant and the job market.'" *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990) (quoting *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983)).  In light of the determinations by multiple medical professionals that she was permanently incapable of returning to her usual occupation as a firefighter, Draycott's actions here were reasonable.  *See* D.E. 105-2, ¶¶ 215, 220-21, 223-24. Moreover, the Fifth Circuit has recognized that Title VII claimants who are unable to work may recover back and front pay awards if the disabling condition from which they suffer is caused by the employer's wrongful conduct. *See Gamboa v. Henderson*, 240 F.3d 1074, *4 (5th Cir. 2000); *see also Breazell v. Permian Trucking & Hot Shot, LLC*, No. 7-15-CV-199-XR, 2017 WL 3037432, *3-4 (W.D. Tex. July 18, 2017) (acknowledging the "factual oddity" of situations where a Title VII plaintiff claims that an employer's wrongful conduct caused an inability to work and applying *Gamboa* to find that back pay and front pay were not foreclosed in such a case).  That is precisely what the evidence establishes and what the United States argues here.  *See* D.E. 105, pp. 47-48.

law in this Circuit and the City must prove both a lack of diligence and the availability of substantially similar positions.

Again and again, district courts (including those in the Southern District of Texas) have found that *Sparks* controls the mitigation analysis and have required employers to prove both a lack of diligence and the availability of substantially similar positions.  *See, e.g., Caplan v. Fluor Enters., Inc.*, No. H-17-2083, 2019 WL 1512395, *13  (S.D. Tex. April 8, 2019) (Lake, J.); *Paulissen v. MEI Techs., Inc.*, 942 F. Supp. 2d 658, 677 (S.D. Tex. 2013) (Lake, J.); *Garcia v. Harris County*, No. H-16-2134, 2019 WL 132382, *2 (S.D. Tex. Jan. 8, 2019) (Miller, J.) (finding that denial of summary judgment on mitigation defense in a First Amendment case where the employer presented no evidence regarding the availability of substantially similar positions was a "manifest error of law"); *Buckingham v. Booz Allen Hamilton, Inc.*, 64 F. Supp. 3d 981, 984-85 (S.D. Tex. 2014) (Ellison, J.); *Starr v. Oceaneering Int'l., Inc.*, No. 4:09-CV-0204, 2010 WL 644445, *12-13 & n.8 (S.D. Tex. Feb. 18, 2010) (Ellison, J.); *Huffman v. City of Conroe*, No. H-07-1964, 2009 WL 361413, *13 & n.37 (S.D. Tex. Feb. 11, 2009) (Atlas, J.); *Miles-Hickman v. David Powers Homes, Inc.*, 613 F. Supp. 2d 872, 887-88 & n.22 (S.D. Tex. 2009) (Atlas, J.); *Little v. Tech. Specialty Prods. LLC*, No. 4:11-CV-717, 2014 WL 1116895, *2-3 (E.D. Tex. Mar. 18, 2014); *Schaeffer v. Warren County*, No. 3:14-CV-945-DPJ-FKB, 2017 WL 5709640, *2-3 (S.D. Miss. Nov. 27, 2017); *Storr v. Alcorn State Univ.*, No. 3:15-CV-618-DPJ-FKB, 2017 WL 3471191, *4 (S.D. Miss. Aug. 11, 2017) (observing that "[a] solid majority of districts within the circuit have" held that *Sparks* controls); *Bertrand v. City of Lake Charles*, No. 2:10-CV-867, 2012 WL 1596706, *8 & n.33 (W.D. La. May 3, 2012); *see also Newcomb v. Corinth Sch. Dist.*, No. 1:12-CV-00204-SA-DAS, 2015 WL 1505839, *7 (N.D. Miss. Mar. 31, 2015) (applying *Sparks* in an FMLA case); *Miniex v. Houston Housing Auth.*, 400 F. Supp. 3d

620, 654 n.178 (S.D. Tex. Sept. 5, 2019) (Atlas, J.) (in the context of a False Claims Act case, applying *Sparks* to the defendant's mitigation defense). While no Fifth Circuit panel has resolved the conflict between *Sparks* and *Sellers*, five months after *Sellers I* was decided, a Fifth Circuit panel cited *Sparks* in affirming a district court's decision that the employer was not entitled to a set off for back pay because the employer had not produced evidence of available positions (even though the plaintiff had not sought employment). *See Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 383 (5th Cir. 1988). As such, there is no basis to conclude that *Sparks* has been overruled.[3]

The Supreme Court's holding in *Ford Motor Company* does not change this result. In *Ford Motor Company v. E.E.O.C.*, the Supreme Court addressed Section 706(g)'s provision that "'[i]nterim earnings or amounts earnable with reasonable diligence by [the claimant] shall operate to reduce the back pay otherwise allowable.'" 458 U.S. 219, 231 n.14, 102 S. Ct. 3057, 3066 n.14 (1982) (quoting 42 U.S.C. § 2000e-5(g)). As the Court observed, this requirement codified a well-established common law tenet that "[t]he person wronged cannot recover for any item of damage that could thus have been avoided." 458 U.S. at 231 n.15, 102 S. Ct. at 3065 n.15 (quotations and internal alterations omitted). However, in the absence of proof that substantially similar positions were available, there is no way to know whether a claimant could have avoided incurring back wages through the exercise of diligence. Because claimants have no duty to accept inferior jobs or go into a different line of work to mitigate their damages, if no substantially similar positions are available, even the most diligent efforts would be fruitless and

---

[3] Indeed, even the cases that have addressed this conflict and followed *Sellers* and *West* concede that *Sparks* has not been overruled and that the Fifth Circuit's rule of orderliness requires adherence to *Sparks*; they have simply followed *Sellers* and *West* because they are more recent. *See, e.g., E.E.O.C. v. IESI La. Corp.*, 720 F. Supp. 2d 750, 755 n.2 (W.D. La. 2010); *Rybar v. Corp. Mgmt., Inc.*, No. 1:14-CV-242-KS-MTP, 2015 WL 12912342, *1-2 (S.D. Miss. July 16, 2015).

would not reduce the amount of back wages due from the employer. *See Ford Motor Co.*, 458 U.S. at 231-32, 102 S. Ct. at 3065-66; *see also Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 111-12 (5th Cir. 1988) (discussing the requirement that positions be substantially similar). For these reasons, the requirement that employers prove that substantially similar employment was available, as well as any alleged lack of diligence in seeking alternate employment, is not only controlling but eminently reasonable. *See Sparks*, 460 F.2d at 443.

Since the City has no proof that substantially similar positions were available to Draycott, as required by *Sparks*, the United States is entitled to summary judgment.

## 2. **Boriskie's Testimony Cannot Salvage the City's Mitigation Defense.**

The City cannot establish that substantially similar positions were available within the City by relying on Fire Chief Boriskie's testimony. The City's use of Boriskie's testimony on this point is misplaced and does not establish that substantially similar jobs were available at the time Draycott was constructively discharged from HFD. The City has never identified Boriskie as an individual with information on Draycott's alleged failure to mitigate, and the limited testimony he provided on this topic dealt exclusively with a single offer he made to Draycott's attorney in late 2009 to satisfy his own desire to prevent Draycott from returning to Station 54A. This offer was made long before Draycott was constructively discharged – no similar offer was made when Draycott went on leave in August 2010 or at any point thereafter, and Boriskie was no longer the Fire Chief after January 2010 or when Draycott left her employment. Nor did Boriskie provide any of the information regarding the wages, duties, promotional opportunities, or responsibilities of these positions that would enable a factfinder to determine whether these positions were substantially similar to Draycott's job as a firefighter. Finally, the fact that the

City did not offer Draycott any position in order to cut off her backpay accrual militates against finding that such positions were actually available.

As an initial matter, this is the first time in nearly two years that the City has suggested that Chief Boriskie had any knowledge of or evidence related to its mitigation defense.  In its initial disclosures, the City named Boriskie as one of more than twenty witnesses who were "expected to have information regarding the claims and defenses which form the basis of the lawsuit."  D.E. 105-6, p. 2. Subsequent disclosures specified only that Boriskie could have information regarding the three investigations the OIG conducted into Draycott's complaints and "his background, education, training, employment history, job duties and responsibilities, as well as his knowledge of the policies and procedures of the City of Houston and the [HFD] and training provided to the City of Houston Fire Department employees." *See* D.E. 105-7, p. 6 (first page of Ex. A); D.E. 105-8, p. 7 (first page of Ex. A); D.E. 105-9, p. 8 (second page of Ex. A); D.E. 105-10, p. 3 (second page of Ex. A); D.E. 105-11, p. 3.  Even when the United States specifically requested factual information about and identification of persons with knowledge of the City's mitigation defense, the City did not identify Boriskie – or, for that matter, any other witness or any other facts or documents related to its defense.  *See* Ex. 1, City of Houston's Objections & Answers to Plaintiff's 1st Set of Interrog. (July 30, 2018), p. 12 (response to Interrogatory No. 6); Ex. 2, City of Houston's 1st Am. & Supp. Answers to Plaintiff's 1st Set of Interrog. (Nov. 1, 2018), p. 6 (response to Interrogatory No. 6); Ex. 3, City of Houston's 2nd Supp. Answers to Plaintiff's 1st Set of Interrog. (Feb. 4, 2019), p. 6 (response to Interrogatory No. 6); Ex. 4, City of Houston's 3rd Am. & Supp. Answers to Plaintiff's 1st Set of Interrog. (Dec. 13, 2019), pp. 6-7.  This supports the conclusion that the City knew Boriskie had no information regarding its mitigation defense and that the City has no evidence to support its

defense.[4] The City is clearly attempting to offer post hoc evidence to meet its burden in establishing this defense.

Similarly, Boriskie's deposition testimony confirms that he has no evidence about the City's mitigation defense. The testimony the City cites was offered by way of describing a single meeting between Boriskie and Draycott's counsel in late 2009 to discuss her return to work. *See* D.E. 105-21, Deposition of Phil Boriskie, 56:1-58:14. But any obligation Draycott had to mitigate her damages did not accrue until after she left her employment, which was in July 2011 – over two years later. Boriskie testified that, prior to this meeting, he "had some reservations and apprehension about [Draycott] returning back to station 54A shift" and that he had a "strong preference" for her to work in "[a]ny other work location other than the 54 on the A shift." *Id.* During the meeting, Boriskie offered to allow Draycott to work in "any fire station in the city [and on] any shift" only to persuade her not to return to work at Station 54A in January 2010, consistent with his own preferences. *Id.* This offer was made months before Draycott even stopped working for the City, and well before the City's retained doctor deemed Draycott unable to work as a firefighter. *See* D.E. 105-2, ¶¶ 216-21 *& exhibits cited therein.* The City seems to place emphasis on the existence of AARF stations other than Station 54 where it asserts Draycott could have worked. The City, however, fails to address the evidence indicating that Draycott could no longer work as firefighter at any station because of her medical

---

[4] Moreover, to the extent Boriskie does have any such information, its exclusion is appropriate based on the City's failure to disclose mitigation as a topic on which Boriskie had information and to name Boriskie in response to the United States' interrogatory. *See* Advisory Committee Note to Fed. R. Civ. P. 26(e) (1970 Amendment) (duty to disclose may be enforced by sanctions including exclusion of evidence as appropriate); Fed. R. Civ. P. 37(c) (providing that a party that has not identified a witness consistent with its disclosure obligations may not use the information or witness unless the failure was substantially justified or harmless); Fed. R. Civ. P. 33(b)(1)(B) (parties receiving interrogatories must provide all information available to them). These failures have prejudiced the United States in its preparation of its case. For example, the United States had no opportunity to explore any information Boriskie may have had regarding mitigation during his deposition because it was unaware that he had any information on this topic.

diagnosis.  This clearly rules out any position at another AARF station.   Indeed, the City has not

identified a single alternative position (inside the City or otherwise) that would fit within

Draycott's medical limitations, particularly given the degree to which Draycott's symptoms are

triggered by firefighters and firefighting paraphernalia as stated in her medical records.[5]  *See*

D.E. 105-2, ¶ 218. The City's vague references to other positions also lack sufficient details

regarding the wages, responsibilities, and promotional opportunities of these positions to enable

a reasonable factfinder to conclude that they were substantially similar to Draycott's position as a

firefighter. Taken in context, it is clear that the testimony the City cites had nothing to do with

Draycott's ability to mitigate her damages.

Finally, the City's own contemporaneous actions strongly suggest that it did not believe

that substantially similar positions were available at the City.  Employers faced with backpay

liability for claims of discrimination can toll the accrual of backpay damages by making

unconditional offers of employment to claimants, which provides them with an opportunity to

mitigate their backpay damages.  *See Ford Motor Co.*, 458 U.S. at 232, 102 S. Ct. at 3066.  In

this case, the City retained Dr. Larry Nahmias to perform a fitness for duty examination on

Draycott.  *See* D.E. 105-2, ¶¶ 216-17.  The City was aware that Dr. Nahmias concluded that

Draycott was not psychologically fit to perform her duties as a firefighter and would not be fit to

do so in the future.  *See* D.E. 105-2, ¶¶ 216-221 *and exhibits cited therein.* Had the City in fact

had a substantially similar job available for Draycott, one would have expected it to offer her that

position after receiving this information.  After all, the City had known of Draycott's charge of

---

[5] The United States also disputes the City's statement that Draycott resigned "not because of any decision or action by any City official or employee, or as a result of any City process..."  D.E. 95, p. 10.  As discussed in greater detail in other pleadings, the United States alleges that the harassment Draycott experienced (both based on gender and in retaliation for her complaints) caused Draycott's constructive discharge and her inability to continue working as a firefighter.  *See, e.g.,* D.E. 105, pp. 46-53.

discrimination for months by that time. *See* D.E. 105-43 (Draycott Charge & Amended Charges of Discrimination). Yet it did not make such an offer, likely because such a position did not exist, and the City has not provided any evidence throughout this litigation to support such finding.

On this record, no reasonable factfinder could find that the City could prove the availability of alternate jobs for Draycott that were substantially similar to her position as a firefighter, or that she could have performed any of these available positions. *See Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 487-88 (5th Cir. 2007) (requiring that substantially similar positions offer virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status). As a result, the United States is entitled to summary judgment on the City's mitigation defense.

### 3. Expert Evidence Is Not Necessary to Prove a Failure to Mitigate Defense, but the Evidence the City Has Offered Here Is Insufficient to Meet its Burden to Demonstrate the Availability of Substantially Similar Jobs under *Sparks*.

To the extent the City argues that it need not present expert testimony to prevail on its mitigation defense, the City misconstrues the United States' argument. The United States does not suggest that expert testimony is necessary for an employer to prevail on an affirmative mitigation defense. Rather, the United States focused on the expert evidence offered by Dr. Steward in this case because it was the only evidence the City had developed regarding the availability of any employment opportunities for Draycott. As set forth in greater detail in the United States' motion, Dr. Steward's evidence is insufficient to establish a genuine issue of material fact for several reasons. *See generally* D.E. 59. The City has not disputed the shortcomings of Dr. Steward's evidence. *See generally* D.E. 95. He did not compare the HFD firefighter position with the three positions he identified to determine whether these positions were in fact substantially similar, nor did he provide any information regarding wages, job

10

duties, or promotional opportunities that would have allowed a factfinder to make such a comparison.  *See* D.E. 59, pp. 7-9.  In identifying these positions, Dr. Steward did not properly account for Draycott's qualifications and medical diagnoses, and he did not conclude that Draycott was in fact qualified for the positions he identified.  *Id.* at pp. 9-11.  Thus, Dr. Steward's deposition and his report provide no evidence from which a reasonable factfinder could conclude that substantially similar positions for which Draycott qualified were available. Because the City has no other evidence as to the availability of substantially similar positions, it cannot establish a mitigation defense and the United States is entitled to summary judgment.

## B.  <u>Title VII Imposes No Duty to Mitigate Emotional Damages, and Importing Such a Duty Would Contravene Clear Congressional Intent.</u>

In its response to the United States' partial motion for summary judgment, the City notes that the Plaintiff "does not appear to have moved for summary judgment" on Draycott's alleged failure to mitigate her emotional distress damages.  D.E. 95, pp. 6-7.  The United States did not include this argument in its motion for summary judgment for the simple reason that Title VII imposes no duty to mitigate compensatory damages (like emotional distress damages) – there is no textual support in the statute for such a duty, despite multiple amendments to Title VII. Requiring that claimants mitigate emotional distress damages in Title VII cases contravenes congressional intent as evidenced by the text as well as the history of the amendments to Title VII.  None of the caselaw the City cites supports the novel idea that a Title VII claimant must mitigate their emotional distress damages.

The statutory text and history of Title VII, as well as traditional canons of statutory construction, all compel the conclusion that Title VII claimants have no duty to mitigate as to compensatory damages.  While Section 706(g) of Title VII clearly imposes a duty to mitigate back wages, there is no parallel language imposing a duty to mitigate emotional distress or

compensatory damages.  *See* 42 U.S.C. § 2000e-5(g)(1). The history of Title VII and its remedial

provisions confirms that this omission was purposeful. In 1991, nearly 20 years after the

amendment that codified the duty to mitigate back pay damages, Congress added a new section

to Title VII to permit claimants to recover compensatory damages.  *Compare* 42 U.S.C. §

1981a(a)(1) *and* Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071, 1072 (1991)

(codified in scattered sections of 42 U.S.C.) *with* 42 U.S.C. § 2000e-5(g)(1) *and* Equal

Employment Opportunity Act of 1972, Pub. L. 92-261, 86 Stat. 103, 107 (1972) (codified as

amended in scattered sections of 42 U.S.C.) (stating that "amounts earnable with reasonable

diligence…shall operate to reduce the back pay otherwise available").  This new section

provided that compensatory damages were "*in addition to* any relief authorized by Section

706(g)" of Title VII, demonstrating that compensatory damages are a distinct category of relief

from the back wages governed by Section 706(g).  42 U.S.C. § 1981a(a)(1) (emphasis added);

*see also* 42 U.S.C. § 1981a(b)(2) (providing that compensatory damages "shall not include

backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the

Civil Rights Act of 1964"). Congress limited the availability of compensatory damages to cases

where intentional discrimination could be proven and capped the amount of compensatory

damages available based on the size of the employer.  42 U.S.C. § 1981a(b)(3).  But Congress

did not include any parallel requirement to mitigate compensatory damages.  The Supreme Court

has held (both in the context of Title VII and elsewhere) that "it would be improper to conclude

that what Congress omitted from the statute is nevertheless within its scope" when the statutory

language is clear.  *Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353, 133 S. Ct. 2517, 2528 (2013)

(citation omitted); *see also Sebelius v. Cloer*, 569 U.S. 369, 378, 133 S. Ct. 1886, 1894 (2013)

(quoting *Bates v. United States*, 522 U.S. 23, 29-30, 118 S. Ct. 285, 290 (1997)) ("We have long

held that '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'").  In short, through its actions and inactions, Congress has given every indication that it chose not to impose a duty to mitigate compensatory damages in Title VII.

In one well-reasoned opinion, a court reconsidered and reversed its earlier decision erroneously finding a duty to mitigate emotional distress damages existed under Title VII. *E.E.O.C. v. Fred Meyer Stores, Inc.*, 954 F. Supp. 2d 1104, 1127-28 (D. Or. 2013).  In reversing course, the court found that its earlier determination was "clear error" because it had "relied on common law when faced with an evident statutory purpose…" *Id.* at 1128.  The court noted that it is improper to assume that common-law principles apply to legislation where "a statutory purpose to the contrary is evident." *Id.* (citing *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108, 111 S. Ct. 2166, 2169-70 (1991)).  The court noted that Congress' "deliberate decision to carve out [a] duty to mitigate [backpay] damages" while omitting a parallel requirement for compensatory damages "clearly signifies that Congress did not intend to create a duty to mitigate all compensatory damages." *Id.* This is particularly true since, as the Supreme Court has noted, the general duty to mitigate damages of all types was well established in the tort context long before Title VII was passed or amended, but Congress only elected to incorporate the duty to mitigate back pay into Title VII.  *See Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231, 102 S. Ct. 3057, 3065 (1982) (noting that Title VII's statutory duty to mitigate backpay is "rooted in an ancient principle of law").  Perhaps for these reasons, other courts considering this issue have likewise concluded that the duty to mitigate does not apply to emotional distress damages.  *See, e.g., United States v. Regents of New Mexico State Univ.*, No. 16-CV-911-JAP-

LF, 2018 WL 4760664, *3-4 (D. N.M. Oct. 1, 2018) ("[T]he duty to mitigate does not apply to

compensatory damages under Title VII."); *E.E.O.C. v. Global Horizons, Inc.*, No. 11-00257,

2014 WL 819129, *6 (D. Haw. Feb. 28, 2014) ("The requirement to mitigate damages does not

apply to [Title VII] claims seeking compensatory damages."); *E.E.O.C. v. Fair Oaks Dairy

Farms, LLC*, No. 2:11 cv 265, 2012 WL 5332039, *3 (N.D. Ind. Oct. 29, 2012) ("Again, the

mitigation defense would not limit compensatory damages arising from emotional distress."); *see

also Castagna v. Luceno*, 558 F. App'x 19, 22 (2d Cir. 2014) (noting that "any failure by [the

plaintiff] to mitigate damages would not by itself bar her recovery of compensatory damages for

emotional distress").

Significantly, the City does not even claim that Title VII imposes a duty to mitigate

emotional damages on claimants. Presumably the City was referencing the common law duty to

mitigate when it made the conclusory statement that "claims for emotional damages are subject

to a duty to mitigate."  D.E. 95, p. 6.  But neither of the two cases the City cites supports its

conclusion, and neither addresses a Title VII claim.  In *Kennedy v. Magnolia Marine Transport

Company*, where the plaintiff was pursuing damages for an injury he sustained as a seaman under

the Jones Act, the court found that evidence regarding the plaintiff's receipt of maintenance and

cure payments was admissible.  189 F. Supp. 3d 610, 618-19 (E.D. La. 2016); *see generally

Vaughan v. Atkinson*, 369 U.S. 527, 531, 82 S. Ct. 997, 1000 (1962) (maintenance and cure

benefits provide injured seamen with food and lodging until they reach maximum medical

recovery).  The plaintiff sought emotional distress damages stemming at least in part from his

financial problems following the injury.  *Kennedy*, 189 F. Supp. 3d at 618.  He moved to exclude

evidence of the maintenance and cure benefits, claiming they were irrelevant because they were

no longer being litigated.  *Id.*  Far from finding that the plaintiff had a duty to mitigate his

emotional distress damages, the court simply found that evidence regarding these benefits was admissible because the benefits could have alleviated some of the plaintiff's concerns about financial problems and thus lessened his emotional distress. *Id.* at 619. In *Rogan v. Lewis*, the plaintiff sued for tortious interference with contract and constitutional due process violations based on her termination. 975 F. Supp. 956, 959-60 (S.D. Tex. 1997). The court observed that evidence of the plaintiff's failure to exhaust her administrative remedies could be admissible at trial to demonstrate a failure to mitigate her damages, as it could have eliminated some of the emotional distress attributable to the alleged due process deprivation. *Id.* at 966 n.14. The court made this observation in deciding whether a trial was in order at all, rather than making any damages determinations, and is properly considered dicta. *Id.* The City has no authority for its assertion that Draycott had a duty to mitigate her emotional distress damages under Title VII.

In short, there is no legal support for the City's assertion that Title VII imposes a duty on claimants to mitigate emotional distress damages. On this record, summary judgment for the United States is appropriate.

**VII.** <u>**Conclusion**</u>

There are no genuine issues of material facts as to the City's inability to prove that Draycott failed to mitigate her damages. The City must prove that substantially similar positions were available to Draycott, and it has no evidence of this (whether through Boriskie or its expert, Dr. Steward). Nor is there any duty for a Title VII claimant to mitigate compensatory damages, such as emotional distress. The Plaintiff is entitled to summary judgment on this issue as a matter of law.

Respectfully submitted,

RYAN K. PATRICK                    ERIC S. DREIBAND
United States Attorney            Assistant Attorney General

15

Southern District of Texas

KEITH EDWARD WYATT
Assistant United States Attorney
Texas Bar No. 22092900
Federal Bar No. 3480
ELIZABETH F. KARPATI
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9713
(713) 718-3303 (fax)
Keith.Wyatt@usdoj.gov
Elizabeth.Karpati@usdoj.gov

Civil Rights Division

DELORA L. KENNEBREW
GA Bar No. 414320
Chief
Employment Litigation Section
Civil Rights Division

KAREN D. WOODARD
Principal Deputy Chief
Employment Litigation Section
Civil Rights Division

*/s/ Hillary K. Valderrama*
JEREMY P. MONTEIRO (DC Bar No. 977628)
HECTOR F. RUIZ, JR. (TX Bar No. 24029814)
HILLARY K. VALDERRAMA (TX Bar No. 24075201)
Trial Attorneys
United States Department of Justice
Employment Litigation Section, PHB 4500
Civil Rights Division
4 Constitution Square
150 M Street, NE, Room 9.930
Washington, DC  20530
(202) 307-6230
(202) 514-1005 (fax)
jeremy.monteiro@usdoj.gov
hector.ruiz@usdoj.gov
hillary.valderrama@usdoj.gov

*Counsel for Plaintiff United States*

## CERTIFICATE OF SERVICE

On January 10, 2020, pursuant to the Federal Rules of Civil Procedure, a true copy of the foregoing was served upon each party to the cause via the CM/ECF system, which caused parties by their respective counsel of record to be served by electronic transmission:

Donald J Fleming
City of Houston Legal Dept
PO Box 368
Houston, TX 77001-0368
832-393-6303
832-393-6259 (fax)
don.fleming@houstontx.gov

Deidra N. Sullivan
City of Houston Legal Department
Labor, Employment & Civil Rights
P. O. Box 368
Houston, TX 77001
832.363.6320
832.393.6259 (fax)
Deidra.Sullivan@houstontx.gov

Joseph Y Ahmad
Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing P.C.
1221 McKinney St
Suite 2500
Houston, TX 77010-2009
713-600-4900
713-655-0062 (fax)
joeahmad@azalaw.com

S Nasim Ahmad
Ahmad Capodice PLLC
24900 Pitkin Rd Suite 300
The Woodlands, TX 77386
832-767-3207
nahmad@cline-ahmad.com

*/s/ Hillary K. Valderrama*
Hillary K. Valderrama